MUÑOZ ET AL. *v.* VICENTY.

APPEAL from the District Court of Mayagüez.

No. 236.—Decided March 12, 1908.

APPEAL—DECISION CONTRARY TO THE EVIDENCE.—The question whether or not a decision is supported by the evidence taken at the trial cannot be considered on appeal unless the appeal is taken within 15 days after the rendition of judgment.

The facts are stated in the opinion.

*Mr. Texidor* for appellant.

*Mr. de Diego* for respondent.

Mr. Justice Figueras delivered the opinion of the court.

For a clear understanding of this case we deem it advisable to present a literal copy of the facts and the agreement out of which this litigation has grown as follows:

"By this instrument the undersigned, Juan Vicenty y Ramos, Pedro Muñoz y Lamberty and Engracia Sanabria y Osuna set forth:

"First. By deed executed before Notary Mariano Riera on January 21, 1901, Manuela Bernard y Lacourt mortgaged, in favor of Pedro Muñoz y Lamberty, the coffee plantation known as "Mayagüecillo," situated in the *barrio* of Bucarabones, of Las Marías, composed of 400 *cuerdas,* and having the boundaries stated in the said deed; and also an urban property, constructed of masonry, situated on Mandez Vigo Street, of this city. This mortgage was constituted to secure a debt of $18,000 which Mrs. Bernard y Lacourt bound herself to pay to Muñoz y Lamberty in the following instalments: Five thousand (5,000) dollars on the 30th of August of each of the years 1901 and following until 1903, and the remaining three thousand (3,000) dollars on the same day and month of the year 1904, the whole amount to draw interest from the 21st of January, 1901, at the rate of 12 per cent per annum. The liability under this mortgage being distributed between the two properties, the rural property to secure fifteen thousand (15,000) dollars, and the urban property three thousand (3,000) dollars.

"Second. By another deed executed before Notary Luis Campillo, on March 9, 1901, Mrs. Bernard y Lacourt conveyed to Muñoz y Lamberty the ownership of the said urban property in payments of three thousand ($3,000) dollars, which was the amount of the instalment to fall due on the 30th of August, 1904, according to the said mortgage deed.

"Third. By another deed executed before the said Notary Campillo, on March 11 of the said year, Pedro Muñoz sold the said urban property to Hernan Lienau for the price of thirteen hundred (1,300) dollars under the following redemption clause:

" 'It is a condition of this contract that the vendor, Muñoz, reserves the right to redeem the property conveyed within the period of one year from to-day, which will terminate on March 11, 1902, by returning to the purchaser said thirteen hundred (1,300) dollars, the amount of the price now paid; but, if the said period expires without the right of redemption herein reserved being exercised, this sale will become absolute and irrevocably consummated.'

"Thereafter, the said right of redemption was extended in regard to the unpaid amount of one thousand (1,000) dollars until the 11th of March, 1903; this term was thereafter extended to the 11th of March, 1904.

"Fourth. By another deed executed before Notary de Diego on November 20, 1903, the spouses, Pedro Muñoz and Engracia Sanabria, assigned to Juan Vicenty the mortgage credit for fifteen thousand (15,000) dollars which they held upon the "Mayagüecillo" plantation. The assignment was made for the price of eight thousand (8,000) dollars, which the assignees declared in the deed of assignment that they had previously received, they having done this with the full knowledge that no preferreed credit encumbered the "Mayagüecillo" plantation except a first mortgage in favor of Jacinto Pérez Barros, for the sum of eighteen hundred (1,800) dollars, upon which foreclosure proceedings have been brought by the creditor upon the execution of the assignment of the other mortgage by the Muñozes in favor of Vicenty Ramos.

"Fifth. It is to be noted that the eight thousand (8,000) dollars, which was the price of the assignment, were received by the Muñozes, not in cash, but in the following manner: Five hundred (500) dollars in cash, and the remaining sev-

enty-five hundred (7,500) dollars in 13 promissory notes, indorsed by Vicenty to the orded of Mr. Muñoz, being for five hundred (500) dollars each, and falling due on the 30th of each December, from the year 1904 to the year 1906, inclusive; and in addition, another promissory note for one thousand (1,000) dollars, which falls due to-day.

"Sixth. After the said assignment had been made in favor of Vicenty, the deed of assignment was presented in the registry of property, which was executed on September 2, 1896, by Pascasio Fajardo in his capacity as attorney in fact of Ana María Lacourt in favor of Federico Delgado y Font, this assignment including a mortgage recorded in the registry of property in favor of the assignor, for the amount of 10,750 *pesos*. There were likewise presented in the registry the following instruments concerning the same mortgage credit: A deed of assignment executed by Federico Delgado y Font to Elviro Lacourt and Fernándo Vázquez, and another deed of assignment by Fernándo Vázquez as the attorney in fact of Elviro Lacourt, and his wife, in favor of Manuel Catalá, as likewise another deed of assignment from Fernándo Vázquez and his wife in favor of Fernándo Vazquez y Morales. These deeds were recorded after noting the curable defects, there appearing in the registry the encumbrance referred to as preferential to the mortgage which the Muñozes assigned to Vicenty y Ramos.

"Seventh. But all of these records derived from the assignment made by Pascasio Fajardo as the attorney in fact of Ana María Lacourt are null and void, among other reasons because the power of attorney to Fajardo had been executed by his principal without the concurrence of her husband, Claudio Barros, which defect renders them null and void, according to the provisions of sections 61 and 62 of the Civil Code, in force on the date the contract was executed. Futhermore, the mortgage credit constituted in favor of Ana María La-

court had long been extinguished, according to proof acknowledged by the subscribing parties.

"Eighth. Notwithstanding the facts set forth in the seventh paragraph, and in spite of the fact that the assignments made after that executed by Federico Delgado are fictitious, summary executory proceedings have been brought in this court by the supposed creditors, Fernándo Vázquez Morales and Manuel Catalá y Dueño, the sole object of which litigation is to destroy the efficacy of the credit in favor of Vicenty y Ramos, who has likewise commenced proceedings of a similar character directed against the incumbered property.

"Ninth. These facts having occurred, Vicenty y Ramos thereupon prepared to bring, and has commenced, proper legal proceedings to counteract the suit of the fictitious mortgage creditors of the "Mayagüecillo" plantation, Messrs. Vázquez and Catalá; but in the meantime, Vicenty refused to acknowledge the efficacy of the promissory note executed in favor of Pedro Muñoz, as appears from the fourth allegation of this complaint, seeking to have Mr. and Mrs. Muñoz rescind the assignment, return the amount paid in cash, and to obtain indemnity for damages and losses, inasmuch as the contract had been executed under the impression that no preferential encumbrance existed against the "Mayagüecillo" plantation other than that in favor of Jacinto Pérez Barros, it thereafter appearing that other encumbrances existed and were recorded and not mentioned in the deed of assignment.

"Tenth. At the same time the period for the redemption of the house sold under an agreement of redemption by Muñoz y Lamberty to Herman Lienau was about to expire, and would expire to-morrow, March 11, without the said Lamberty having paid the necessary amount to redeem the same. Under these circumstances the parties in interest reached an agreement, the conditions of which are set forth in the following clauses: (1) Vicenty y Ramos purchases from Mr. and Mrs. Muñoz their right of redemption to the urban estate, sold

under a redemption clause to Ernesto Hernan Lienau. The sale of that right shall take place to-day, by public deed, for the price of two thousand five hundred (2,500) dollars—that is to say, five hundred (500) dollars which Mr. and Mrs. Muñoz have heretofore received, and the payment in cash made by Vicenty upon acquiring said mortgage credit upon the said "Mayagüecillo" plantation; one thousand (1,000) dollars which Vicenty retains to pay the amount to be delivered to Mr. Lienau, in order to obtain the redemption of the property; and one thousand (1,000) dollars, with which Vicenty shall pay the expenses of the judicial proceedings already brought, and which may be prosecuted for the purpose of foreclosing upon the "Mayagüecillo" plantation and of annulling the mortgage already extinguished upon which Vázquez y Catalá are attempting to recover. (2) To-morrow Vicenty will secure the redemption of the urban property aforesaid. (3) Mr. and Mrs. Muñoz delivered to Vicenty as paid the promissory note for one thousand (1,000) dollars due this day, as appears in the fifth stiplation of this agreement, and upon the other 13 documents of the same class they shall make a proper indorsement in accordance with the stipulations of the clauses herein. (4) If Vicenty y Ramos secures within the period which will expire on December 30, 1905, the adjucation and possession of the "Mayagüecillo" plantation without having been compelled to pay Vicenty, and without having had to further incumber the property by any mortgage other than the preferential one in favor of Jacinto Pérez Barros, in such a way as to annul or extinguish the mortgage which Vázquez y Catalá are attempting to recover, Vicenty binds himself to convey to Mr. and Mrs. Muñoz the ownership of the urban property referred to, and he will further pay to them the amount of the 13 promissory notes which remain in their possessin, in view of the assignment of the mortgage upon the "Mayagüecillo" plantation, and of the stipulations contained in this agreement, Vicenty in that

case to take up and pay said documents as due. (5) In the case, which is not probable, that Vicenty should be unable to obtain an award and possession of the "Mayagüecillo" plantation, under the conditions stipulated, and within the period agreed upon, then he will also convey to Mr. and Mrs. Muñoz the ownership of the said urban property upon payment by them, at the end of the period aforesaid, of the five hundred (500) dollars paid by Vicenty to Muñoz as the cash price of the assignment referred to, the one thousand (1,000) dollars which he shall pay Hernan Lienau for the redemption of the urban property, the interest on said amounts at the rate of 10 per cent per annum, and the expenses incurred in the judicial proceedings prosecuted; and the contract of assignment of mortgage upon the "Mayagüecillo" plantation, executed by Mr. and Mrs. Muñoz in favor of Vicenty y Ramos, shall terminate.

"And in testimony thereof the parties in interest sign this document in Mayagüez on March 10, 1904. P. Muñoz, Engracia Sanabria, Juan Vicenty."

The parties agree as to the validity of this instrument and that of the 13 promissory notes referred to therein, and they acknowledge the validity thereof and base their respective claims on the said agreement.

The plaintiffs pray in their complaint that the defendant be adjudged to pay the amount of the three promissory notes sold—that is to say, $1,500, with interest at 1 per cent per month upon each note from maturity; to restore to the plaintiffs the title and owership of the masonry house on Mandez Vigo Street, in Mayagüez, which house was the object of the agreement of March 10, 1904; to pay the sum of two thousand (2,000) dollars as indemnity for damages and losses and the payment of costs.

To reach these conclusions the plaintiffs maintain that the defendant voluntarily and maliciously failed to comply with the obligations imposed upon him by the fourth clause of

the agreement above mentioned, and aver that this is the only reason why the "Mayagüecillo" plantation was not directly awarded to him, and that he could and should have obtained a direct award of that property to him in payment of the mortgage credit for fifteen thousand (15,000) dollars assigned to him by the plaintiffs.

In his answer the defendant prays that the complaint be dismissed and by way of counterclaim he asks that the contract assigning the mortgage executed by Pedro Muñoz and Engracia Sanabria to Juan Vicenty before Notary José de Diego on November 20, 1903, be declared extinguished, and that the fifth clause of the above contract of March 10, 1904, be declared null and void; that the court decree that Vicenty is only bound to convey to the plaintiffs the ownership of the urban property referred to in the agreement aforesaid, pro-vided they pay Vicenty the five hundred (500) dollars which they received from him, the one thousand (1,000) dollars paid to Lienau for the redemption of said property, the interest on these amounts from the date on which they were paid by Vicenty, at the rate of 10 per cent per annum, the sum of fifteen hundred (1,500) dollars disbursed by him in carrying on the litigation, and the costs of this action.

In support of these demands, he maintains that he did everything that was possible for a human being to do in an attempt to secure the award of the "Mayagüecillo" plantation, and, for that purpose, attempted to pay Jacinto Pérez Barros the amount of the debt, but his propositions were rejected, and as it was stipulated under the fourth clause of the agreement that, if Vicenty should obtain the award and possession of the said plantation before the 30th of December, 1905, without having been compelled to pay Jacinto Pérez Barros and without encumbering the property with any lien other than the preferential mortgage credit, he found that the property was encumbered by other liens and it was neces-

sary to carry out a great number of transactions, and that, up to the present time, he has been unable to secure the possession of the property under the stipulations contained in the said clause of the agreement of March 10, 1904, and, having been unable to secure the "Mayagüecillo" plantation under the conditions stipulated, the fifth clause of the said agreement constitutes ample justification for the prayers of the defendant made by way of his counterclaim.

Trial having been held, the evidence offered by each of the parties was taken, and on November 1, 1907, the judge of the Mayagüez court rendered judgment, holding that the facts and the law were in favor of the defendants, and sustained his counterclaim.

From this judgment the plaintiffs took an appeal, notice whereof was filed in the office of the secretary of the inferior court on November 18, 1907.

Now then, the parties agree that this litigation must be decided under the fourth clause of the agreement of March 10, 1904.

From a simple reading of that clause, it will be seen that Vicenty was bound to take various steps for the purpose of obtaining, within the period specified, the award and possession of the "Mayagüecillo" plantation without encumbering the same with any lien other than the mortgage held by Pérez Barros.

The plaintiffs maintain that Vicenty has done nothing to comply with the obligations assumed under the agreement, and Vicenty affirms that he has done everything in his power to accomplish the things which he agreed to do; so that the question is one of fact.

The judgment holds that the facts and the law are in favor of Vicenty.

So if, on appeal, that judgment is assailed, it is because the appellant maintains that it is contrary to the evidence.

But in this case the appeal was taken after the expiration of the period of 15 days, calculated according to the provisions of section 388 of the Political Code, which reads as follows:

"Article 388.—The time in which any act provided by law is to be done is computed by excluding the first day and including the last, unless the last day is a holiday, and then it is also excluded."

And the law governing this class of appeal is section 295 of the Code of Civil Procedure, the pertinent portion of which reads as follows:

"But an exception to the decision or verdict on the ground that it is not supported by the evidence cannot be revised on an appeal from the judgment unless the appeal is taken within 15 days after the rendition of the judgment."

It is, therefore, clear that we cannot consider the evidence and must affirm the judgment appealed from, notwithstanding the fact that the record contains a statement of the case approved by the trial judge.

This view is not a new one. This court, basing its action on the decisions of the Supreme Court of California, has announced it many times heretofore in the following cases: *Rafael Valentín Román* v. *The American Railroad Co. of Porto Rico,* 10 P. R. Rep., p. 52; *Estate of Maisonave* v. *Julián Maisonave et al.,* 13 P. R. Rep., p. 254; *Estate of Oliva & Co.* v. *J. Matienzo & Co.,* 13 P. R. Rep., p. 285; *José I. Esteras* v. *Josefa Ríos Colón et al.,* 13 P. R. Rep., p. 376; *Ricardo Ortiz Ríos* v. *Trinidad Molina,* 13 P. R. Rep., p. 388.

There is no reason whatever to warrant this court in changing its opinion announced in so many cases.

And as we find no question whatever of law which can be considered entirely independent of the facts submitted, and which has been the object of evidence introduced at the trial, the judgment appealed from must be affirmed, with the costs of this appeal against the appellant.

*Affirmed.*

Justices Hernández, MacLeary and Wolf concurred.

Mr. Chief Justice Quiñones did not take part in the decision of this case.